[L. A. No. 9775. In Bank.—March 1, 1932.]

WESTERN MORTGAGE AND GUARANTY COMPANY (a Corporation), Plaintiff and Appellant, v. WILLIAM G. GRAY, as Executor, etc., et al., Defendants and Appellants; CHARLES H. TOLL, Defendant and Respondent.

Henry J. Stevens, Winfield Dorn, Arthur L. Shannon and Brobeck, Phleger & Harrison for Plaintiff and Appellant.

Call & Murphey, Joseph H. Call, Asa V. Call, Anderson & Anderson, Anderson & Anderson & Sheahan, W. H. Anderson, Woodruff & Shoemaker, Clyde C. Shoemaker and J. F. Moroney for Defendants and Appellants.

Lloyd W. Moultrie for Respondent.

Chandler, Wright & Ward and George W. Fenimore, *Amici Curiae* in support of motion to vacate judgment.

Fredericks, Hanna & Morton, Harold C. Morton and Courtney L. Moore, *Amici Curiae* in opposition of motion to vacate judgment.

CURTIS, J.—The plaintiff Western Mortgage and Guaranty Company is a corporation organized under the provisions of sections 453aa to 453hh of the Civil Code of the state

of California, and will be hereafter referred to as the Mortgage Company or the plaintiff. The Security Holding Company (hereinafter referred to as the Holding Company) was a corporation organized under the laws of this state with a capital stock of $50,000. The directors of said Holding Company were Harry Gray and the defendants Robert Marsh and Charles H. Toll. Harry Gray died after the commencement of this action and the executor of his will has been substituted in his stead. On February 8, 1915, said corporation executed and delivered to the plaintiff herein its promissory note for the sum of $100,000, and at the same time and as part of the same transaction and for the purpose of securing the payment of said promissory note, the Holding Company executed and delivered to the Mortgage Company a mortgage upon certain real property owned by it and situated in the county of Los Angeles. On February 13, 1915, the Mortgage Company in pursuance of its mortgage insurance business, assigned said mortgage and the note thereby secured to the Mercantile Trust Company of San Francisco for the purpose of securing certain ''mortgage participation certificates'' in the sum of $100,000. These certificates were delivered to the Holding Company as the consideration of said note and mortgage, less certain of said certificates of the value of $5,000, which were retained by the Mortgage Company as a bonus or in compensation of its services in the transaction. These certificates recited that the holders thereof were entitled to participate to the extent named in each thereof, in the note and mortgage executed by the Holding Company to the plaintiff and by the plaintiff assigned to the Mercantile Trust Company. They were signed by the plaintiff, who guaranteed their payment. The Holding Company defaulted in the payments of said promissory note and due to said default the Mercantile Trust Company foreclosed said mortgage. Execution was issued, which was returned partially unsatisfied, and a deficiency judgment amounting to the sum of $76,470.65 was entered against the Holding Company. Thereafter and on March 25, 1921, the Mercantile Trust Company upon payment by the Mortgage Company of all said mortgage certificates outstanding, and the cancellation thereof, assigned to the Mortgage Company the deficiency judgment and any and all rights and causes

of action in any way connected with the same. Said assignment, among other things, recites that there is transferred to the Mortgage Company the right "particularly to enforce the liability of the directors of said Security Holding Company under the provisions of section 309 of the Civil Code of the state of California". Thereafter the Mortgage Company instituted this action for the purpose of recovering under the provisions of said section 309 of the Civil Code from the three directors of the Holding Company the balance due on said promissory note with interest. The complaint also contains allegations in behalf of other creditors of said Holding Company with a prayer for judgment in favor of such other creditors of said corporation as may join in said action and prove themselves entitled to relief against the defendants therein. The three directors appeared separately and made answer to the complaint. After the death of Harry Gray and the appointment and qualification of the executor of his will, the plaintiff presented its claim against his estate for the balance due on said promissory note. The executor rejected said claim and plaintiff thereupon filed its supplemental complaint against said executor to recover on said claim the amount due and unpaid on said promissory note. The trial of said action resulted in a judgment in favor of the plaintiff in the amount sued for against the defendants William G. Gray, executor of the will of Harry Gray, deceased, and Robert Marsh and against the plaintiff and in favor of the defendant Charles H. Toll. The plaintiff appealed from the judgment in favor of the defendant Charles H. Toll, and the two remaining defendants appealed from the judgment against them.

The section of the code under which this action was instituted as it stood at the date of the execution and delivery of said note and mortgage by the Holding Company to the plaintiff in so far as it is material for our purposes reads as follows: "The directors of corporations must not make dividends except from the surplus profits arising from the business thereof; nor must they create any debts beyond their subscribed capital stock; nor must they divide, withdraw, or pay to the stockholders, or any of them, any part of the capital stock, except as hereinafter provided, nor reduce or increase the capital stock, except as herein specially

provided. For a violation of the provisions of this section, the directors under whose administration the same may have happened (except those who may have caused their dissent therefrom to be entered at large on the minutes of the directors at the time, or were not present when the same did happen) are, in their individual or private capacity, jointly and severally liable to the corporation, and to the creditors thereof, to the full amount of the capital stock so divided, withdrawn, paid out, or reduced, or debt contracted; and no statute of limitation is a bar to any suit against such directors for any sums for which they are liable by this section; . . . " (Stats. 1905, p. 558.)

While each of the defendants relies upon certain special defenses peculiar to his own individual case, all of them, without abandoning these special defenses, now unite upon a defense common to them all and which, if tenable, would defeat plaintiff's action as against each and all of them. We will, therefore, first address ourselves to this defense.

█ It is, briefly stated, that the claim upon which the plaintiff bases its cause of action was assigned to it by the Mercantile Trust Company of San Francisco; that the liability upon which said claim is based was imposed upon the directors of the Holding Company by the terms of section 309 of the Civil Code for the creation of an indebtedness in excess of the capital stock of said company; and that this liability is in the nature of a penalty or forfeiture and is not assignable.

The facts of this case as detailed above show the circumstances under which the plaintiff acquired the claim upon which it now seeks to hold the defendants liable. Both at the trial and before the District Court of Appeal there was a sharp conflict between plaintiff on the one hand, and at least some of the defendants on the other as to whether plaintiff held said claim under its original ownership of the note and mortgage, executed in its favor by the Holding Company, or whether its present ownership thereof was due in part or wholly to the assignment by the Mercantile Trust Company to it of the deficiency judgment against the Holding Company with all rights thereunder. It has been plaintiff's contention from the commencement of this action that by its transfer of said note and mortgage to the Mercantile Trust Company of San Francisco, as hereinabove set

forth more fully, it divested itself of all its rights, title and interest in said note and mortgage, and in and to any right of action to recover against the defendants under the provisions of section 309 of the Civil Code, and that its present right to the deficiency judgment rendered on the foreclosure of said mortgage, and its only right to recover from the defendants on their liability under section 309 of the Civil Code, was acquired by it by and through the assignment of these rights to it by the Mercantile Trust Company. While it may not be entirely clear, after a close and careful study of the written assignment and other writings passing between the parties and resulting in the transfer of said note and mortgage to the Mercantile Trust Company, that this position of the plaintiff is correct, yet for the purposes of the decision of the question of the assignability of said claim we will assume that it is, and that the plaintiff's sole right to maintain this action is as the assignee of the Mercantile Trust Company. We are content to adopt this course for the reason that, as we view the case, the decision as to the final liability of the defendant would not be any different were we to accept the contention made by some of the other defendants, and particularly by the defendant Marsh, that the assignment to the Mercantile Trust Company was merely by way of security and did not divest the plaintiff of all its title and interest in said note and mortgage.

This case was originally appealed to this court and transferred subsequently to the District Court of Appeal. The latter court rendered its decision affirming the judgment in favor of the defendant Toll, and the judgment against the defendant Marsh, and reversing the judgment against the defendant Gray, as executor. A petition for a transfer was then made to this court by the plaintiff, and also by the defendant Marsh. Both were granted. At the time we granted said petitions we had under submission the case of *Peterson* v. *Ball,* later decided and reported in 211 Cal. 461 [74 A. L. R. 187, 296 Pac. 291], and it was largely due to the fact that the questions involved in this action bore a distinct similarity to the questions then before us in *Peterson* v. *Ball* that we granted a hearing in this court. In so far as any similarity exists between this case and the case of *Peterson* v. *Ball,* we will be disposed to follow the rulings

of that case. Not only is the decision therein the latest expression of the views of this court upon the questions therein determined, but it received the most careful attention from this court, and in arriving at our decision therein we had the able assistance not only of counsel appearing for the parties therein, but also of counsel in the present case, who, under permission of the court, filed exhaustive briefs as *amici curiae.*

The case of *Peterson* v. *Ball, supra,* like the present action was instituted against directors of a corporation to recover on the liability imposed by section 309 of the Civil Code against directors under whose administration there had been created an indebtedness in excess of the subscribed capital stock of the corporation. The plaintiffs in said action were trustees under a general assignment to them by the corporation of all of its property for the benefit of its creditors. We held in that action that the assignment under which the plaintiffs held the property of said corporation was sufficiently comprehensive in its terms to cover causes of action like that involved in said action. We further held, however, that the liability imposed by section 309 of the Civil Code against directors of a corporation who have suffered debts to be created in excess of the subscribed capital stock of the corporation was in the nature of a statutory penalty and was not assignable. We limited our opinion to the proven facts in that case. The plaintiffs there held simply an assignment of the mere naked right to sue the directors, and we confined our opinion to the determination of the legal effect of such an assignment, and we expressly refrained from passing upon any other question. At the same time, *Peterson* v. *Ball, supra,* does establish certain fundamental principles of law, the determining of which were necessary for its decision which we think must be given consideration here. It was definitely established by the decision of that case that the liability imposed by section 309 of the Civil Code upon directors responsible for excess indebtedness was not contractual in character nor was it imposed as compensation to the corporation or the creditors to reimburse them for loss sustained as a result of the illegal acts of the directors, but on the other hand was a punitive measure, imposing a liability upon the offending directors as a penalty for the violation of the statute. Regarding the distinction between

a statute imposing a penalty and one where the liability is contractual in character, we said in our opinion (page 481), "But the distinction which *amicus curiae* points out is not the distinction which marks the dividing line between a punitive statute and one that is not. A punitive statute is one which creates a forfeiture or imposes a penalty. 'What is meant by a statutory penalty was defined in *Los Angeles County* v. *Ballerino,* 99 Cal. 593 [32 Pac. 581, 34 Pac. 329], to be "one which an individual is allowed to recover against a wrongdoer, as a satisfaction for wrong or injury suffered, and without reference to the actual damage sustained"' (*Moss* v. *Smith, supra,* p. 783 [171 Cal. 777, 783, 155 Pac. 90, 92].) This court in that same case held that the liability against directors for the violation of section 309 in creating excessive debts came within the above definition and could be enforced against the directors without reference to the loss sustained by the corporation as a result of the action of the directors in illegally creating debts in excess of the capital stock. This, therefore, must be held to be the deciding characteristic of a statutory penalty, and the feature which distinguishes it from a mere contractual liability. We are, therefore, unable to agree with *amicus curiae* in the above contention."

The question, therefore, as to the nature of the liability imposed upon directors by section 309 of the Civil Code must be held to have been definitely settled and determined by this court in its opinion in *Peterson* v. *Ball, supra.* The right given by said section of the code being in the nature of a statutory penalty, the authorities are, as stated by us in *Peterson* v. *Ball, supra,* to the effect that such a right is not assignable. The case of *Esposti* v. *Rivers Bros., Inc., et al.,* 207 Cal. 570 [279 Pac. 423], and other authorities cited in the opinion of *Peterson* v. *Ball, supra,* on pages 468 and 469, hold that such a right is not assignable. We can see no good reason why any different rule should apply to the rights of creditors than those of the corporation. It is true that in many jurisdictions it has been held that the assignment of the debt against the corporation carries with it the right to sue the directors on their liability imposed by statutes similar to section 309 of the Civil Code of this state, but in those jurisdictions it is held that the liability under the statute is contractual in character and that it passes by

assignment as an incident to the principal claim. A case of this character is cited in our opinion in *Peterson* v. *Ball, supra,* and is entitled *Colcord et al.* v. *Granzow et al.,* 137 Okl. 194 [278 Pac. 654]. A close study of that case will show that the court held that the liability under a statute similar to section 309 of our Civil Code was contractual in character and, therefore, the right of action thereon passed by assignment of the claim of a creditor. We also mentioned in our opinion in the case of *Peterson* v. *Ball, supra,* the case of *United States Farm Land Co.* v. *Bennett,* 55 Cal. App. 299 [203 Pac. 794]. That case like the one from Oklahoma Supreme Court is relied upon by the plaintiff in support of its contention that it may maintain this action even though the claim sued upon has been assigned to it by the Mercantile Trust Company. *United States Farm Land Co.* v. *Bennett, supra,* was on an assigned claim, it is true, but there were other considerations which entered into the decision of that case which in our opinion controlled the court in sustaining the action, not the least of which was the fact that the defendant Bennett was found to be the *alter ego* of the corporation of which he was a director and president, and was, therefore, personally liable for the value of the goods and merchandise sold to the corporation, aside from and independent of his liability as director of said corporation. Furthermore, the question of the assignability of the right to sue under said section 309 was not raised in said action, and this point was neither discussed nor decided in the decision of the cause. These two authorities are not in our opinion of any assistance to the plaintiff in the face of the contrary decisions cited by us in *Peterson* v. *Ball, supra,* and hereinafter referred to. It is plain from these decisions that the claim sued upon is not assignable and that plaintiff cannot maintain this action against said defendants or either of them.

In a former part of this opinion we intimated that the final liability of the defendants to the plaintiff would not be different even if the right of the plaintiff to maintain this action was predicated upon its original ownership of said promissory note and mortgage and without reference to the assignment thereof to the Mercantile Trust Company and the assignment of said company back to the plaintiff. At the time of making that assertion we had in mind the

special defense which each of the defendants interposed to plaintiff's cause of action. We will refer to these briefly.

■ The pleadings show that defendant Toll did not vote for, nor was he present at the meeting which adopted the resolution authorizing the execution of said note and mortgage of $100,000 to the plaintiff. The only allegations in the pleadings showing defendant Toll's connection with this transaction were that he was a director of said corporation and "prior to the execution and delivery of said note as aforesaid, said defendant Toll in writing in the record of said meeting in the minute book of said corporation, assented to and approved said resolution authorizing the execution and delivery of said note and the creation of the indebtedness represented thereby". With the pleadings in this state, the defendant Toll moved for judgment on the pleadings, and the trial court granted the same. The motion was properly granted. The complaint did not bring this defendant within the terms of the section of the code under which it was sought to hold him liable. ■ "Section 309 of the Civil Code . . . is penal in its nature when considered from the standpoint of a director (*Moss* v. *Smith, supra*), and its provisions are to be strictly construed." (*Judson Mfg. Co.* v. *Wyckoff*, 60 Cal. App. 305 [213 Pac. 269, 270].) To the same general effect might be cited, *Irvine* v. *McKeon*, 23 Cal. 472, *Talcott Land Co.* v. *Hershiser*, 184 Cal. 748 [195 Pac. 653], and *Peterson* v. *Ball, supra.*

■ The defendant Marsh as a defense to this action set up a contract, dated August 9, 1919, which recited that in consideration of $50,000 paid by him on that date the plaintiff released him from all claims which plaintiff "has or may now claim to have as against said first party [Marsh] other than"—then follows a number of claims, ten or more, which are expressly excepted from the general or blanket release above. These excepted claims are minutely described and set out in much detail in this contract. The claim involved in this action is not among them. We think, therefore, after a careful examination and study of this contract, that it was intended to be a complete statement and adjustment of all the claims and obligations which either of said parties held against the other. It was evidently drawn with great care and its terms and provisions are broad and most comprehensive. It covered all claims which the plain-

tiff had against the defendant Marsh except such as were expressly excepted therein. It, therefore, covered the claim sued on in this action, if said claim was then owned by the plaintiff. Plaintiff, however, contends that it had assigned all of its interest in the promissory note and mortgage of the Holding Company to the Mercantile Trust Company and that at the time of the settlement with defendant Marsh it did not own said note and mortgage nor have any interest therein, and consequently, its assignment carried with it the right of action under section 309 of the Civil Code against the directors of the Holding Company for the creation of said excess indebtedness. Conceding that such right of action could be thus assigned, we do not think the facts show that plaintiff ever divested itself of all of its interest in said note and mortgage. The assignment to the Mercantile Trust Company was only as security for the payment of the mortgage participation certificates, which were obligations of the plaintiff, and when these were paid the note and mortgage were to be reassigned to the plaintiff. This transaction was in the nature of a pledge by the plaintiff of the securities to the Mercantile Trust Company to secure the indebtedness of the pledgor.

"The general rule that notwithstanding any agreement to the contrary a lien or a contract for a lien transfers no title to the property subject to the lien, is applicable to pledges. While a pledgee has a special property or interest in a pledge, the title or general property remains in the pledgor, notwithstanding an apparent transfer of legal title, or condition broken. He is not divested of his title in assigned securities merely by force of an assignment thereof. The transfer of a pledged note and mortgage, for example, does not vest title any further than to enable the pledgee to collect the note and mortgage from the maker thereof." (21 Cal. Jur. 328, 329.) The parties to the assignment here under consideration had much the same relation to each other, as do the parties to a trust deed given to secure an indebtedness of the owner of the property. The property owner executes his note in favor of his creditor and a trust deed to a third party to secure the note. The grantor has not by such a deed divested himself of all his right and title to the property conveyed. He still retains an interest in the property subject to his deed of trust to secure his

note. Whether this interest is of a legal or equitable character is not important here. While he cannot in any way impair the rights of the owner of the security, nevertheless he may transfer or encumber the trust property, subject to such rights, and if he satisfies his debt and the property is reconveyed to him, whatever conveyance he has made or encumbrances he has placed upon the property are legal and binding upon him. "While a trust deed conveys the legal title to the trustee, since on payment of the debt the property will revest in the trustor or his successors, there is left in the trustor or grantor an interest in the property which is, it has been held, a legal estate as against all persons except the trustee and those claiming under him —an estate of inheritance—one which he can transfer or devise, subject only to the execution of the trust. As has been said, the trustor, except as to his trustee and those holding under him, is treated as the holder of the legal title. In some cases, however, it is said that, subject to the trust, the trustor has an equitable title. For example, it has been held that the grantor has an equitable interest—subject to attachment—consisting of the right to a reconveyance upon payment of the indebtedness secured, and in case of default and sale a right to the surplus proceeds remaining after satisfaction of the debt." (25 Cal. Jur. 40, 41.) ■ From these authorities we must conclude that the plaintiff by its assignment to the Mercantile Trust Company of the note and mortgage as security for the payment of said mortgage participating certificates, did not divest itself of all its title and interest in said securities, and that plaintiff at all times after said assignment had such an interest in and to said securities as would entitle it, subject to the rights of the mortgage certificate holders, to convey or encumber said securities and to release those liable for their payment or of any and all liability thereunder. When, therefore, these securities were reassigned to the plaintiff, the latter took them subject to whatever release or conveyance it had theretofore made of them. The special defense of the defendant Marsh must, therefore, be sustained, as it shows a complete release by the plaintiff in favor of defendant Marsh of the claim which is the basis of this action.

■ The special defense of the defendant Gray, as executor, is that the cause of action herein, not being founded

upon contract, does not survive the death of the original debtor. Section 1582 of the Code of Civil Procedure, now section 573 of the Probate Code, designates the different classes of actions which may be maintained against executors and administrators. The only class of personal actions mentioned therein are actions "founded upon contracts". We have already shown that this action is not founded upon a contract, but is one brought to recover a statutory penalty. The defense of the defendant Gray, as executor, we think must also be sustained.

In view of the conclusion at which we have arrived as hereinbefore set forth, it becomes unnecessary for us to consider the defense of the statute of limitations.

After this appeal had been perfected the defendant Toll moved to dismiss the same, and the other two defendants moved to dismiss this action against them, on the ground that since the commencement of this action section 309 of the Civil Code had been amended by eliminating therefrom the provision making directors of a corporation liable for the creation of excess debts. A similar motion was made upon the same ground in the case of *Peterson* v. *Ball, supra,* and denied. The question is fully considered in the opinion in that case. For the reasons expressed in said opinion the motions to dismiss in the present action are denied.

The judgment in favor of the defendant Toll is affirmed, and the judgment against the defendants Marsh and Gray is reversed.

Langdon, J., Seawell, J., Preston, J., and Waste, C. J., concurred.